**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESSE EARL AUL, | : | Civil No. 3:18-CV-2142 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECT CARE SOLUTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Pending before this court are separately filed motions filed by the two groups of defendants in this action who work at the Rockview State Correctional Institution ("SCI-Rockview"), in Bellefonte, Pennsylvania, where Plaintiff Jesse Earl Aul ("Plaintiff") was incarcerated in December 2017. The "Medical Defendants," who provide medical services to SCI-Rockview inmates, include Correct Care Solutions, Dr. Vernon Preston, and Physician Assistant ("PA") Patrick Nagle. Their motion to dismiss, or in the alternative for summary judgment, seeks dismissal of the complaint in its entirety based on Aul's failure to properly exhaust his administrative remedies as to the claims against them, failure to state a viable Eighth Amendment claim, and failure to articulate a cognizable medical malpractice claim or vicarious liability claim against them. (Docs. 23, 24.) The second motion to dismiss, Doc. 26, filed by the employees of the Pennsylvania Department of Corrections ("DOC") are Nurse Julie Chamberlain, Nursing Supervisor Elaine Coffman, and Nursing Supervisor Lisa Campbell

("DOC Defendants").  They contend that Aul fails to demonstrate their deliberate indifference to his medical condition and his state negligence claims are subject to dismissal due to his failure to file a Certificate of Merit ("COM").  (Doc. 29.)  For the reasons that follow, the court will dismiss Plaintiff Jesse Earl Aul's Section 1983 claim that Nurse Chamberlain violated his Eighth Amendment rights, his claims of professional medical negligence against all Defendants but Nurse Chamberlain, and his medical negligence claims premised on vicarious liability as to all Defendants.  Aul will be granted limited leave to file an amended complaint as to his claims against Nurse Chamberlain.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Allegations of the Complaint (Docs. 1 and 4)

According to the allegations in Aul's complaint, on Saturday morning, December 16, 2017, Aul participated in a "Power Lifting" program at SCI-Rockview.  At 9:15 a.m., after performing his job assignment as a "spotter & loader," he began his morning workout.  (Doc. 1, ¶ 15.)  After warming up on the squat machine, he experienced sudden blindness in his left eye, partial loss of vision in his right eye, and an extreme headache.  He sat for 20 to 25 minutes before telling his supervising staff member about the situation.  At 9:50 a.m., Aul went to the medical unit.  He waited 15 minutes before he was seen by Nurse Chamberlain.  (*Id.*)  He told her he thought he suffered a stroke.  Ms. Chamberlain

checked his vital signs and found that his blood pressure was high.  She checked his pupils and had Aul read an eye chart.  The exam did not reveal any abnormalities.  (Doc. 4-1, p. 3.)  Nurse Chamberlain stated Aul suffered from ocular strain, and not a stroke.  She dispensed Ibuprofen, told him to "take it easy," and to return if his headache did not get better or his other symptoms returned. (*Id.*)  Aul "took it easy" the rest of the evening.  He went to back to the power lifting program, but did not work out.  Although the Ibuprofen did not alleviate his headache, 85% of his vision had returned.  (Doc. 1.)

The following day, Aul continued to rest and take Ibuprofen.  However, at 5:30 p.m., Aul went back to the weight lifting program and completed "light sets of lat pull down" exercises which elevated his heartrate.  (*Id.*, ¶ 16.)  As his heartrate climbed, he felt his vision "going away."  (*Id.*)  He immediately stopped lifting and returned to his housing unit.  He took a shower, drank water, took more Ibuprofen, but his headache and blurry vision continued.

Aul rested all day Monday, December 18, 2017, took Ibuprofen, and drank water.  (*Id.*, ¶ 17.)  On Tuesday, December 19, 2017, Aul returned to the powerlifting program after explaining to his coach that Nurse Chamberlain said he did not have a stroke but was suffering from an ocular strain.  (*Id.*, ¶ 18.)  Aul first worked as a spotter and loader in the gym before starting a light workout at 9:15

a.m.  Again, Aul experienced a loss of vision and returned to his housing unit to rest.  (*Id.*)

The next day Aul reported to the power lifting area but did not work out. (*Id.*, ¶ 19.)  He took a hot shower when he returned to his housing unit which triggered a loss in vision.  (*Id.*)  He took more Ibuprofen and a nap.  Later that day, he pushed a laundry cart to the institution's main gate and then returned to his housing unit.  (*Id.*)

On Thursday, December 21, 2017, Aul took the day off from lifting and visited with his mother.  On the walk down to the visiting area, Aul became dizzy and lost his vision.  (*Id.,* ¶ 20.)  The following day he returned to powerlifting and told his supervisor he still was experiencing problems with his vision and a headache.  (*Id.*, ¶ 21.)  When performing some light leg extensions, his heart rate became elevated, and he again experienced visual difficulties.  At that point he decided he needed to be "checked out."  (*Id.*, ¶ 21.)  He returned to his housing unit at 10:00 a.m., and was seen by Dr. Preston in the medical unit at 11:00 a.m.  (*Id.*) After taking his blood pressure and a urinalysis, Dr. Preston sent Aul to the Mount Nittany Medical Center ("Medical Center").  (*Id.*)

Aul remained at the Medical Center until Sunday, December 24, 2017.  (*Id.*, ¶ 22.)  He received "a plethora of tests" before being told he had suffered a stroke and had "two spots on the brain, and one on his liver."  (*Id.*)  Physicians also told

him he could continue to work out if he did not "overdo it."  (*Id.*, ¶ 25.)  Upon his return to SCI-Rockview, Dr. Preston examined Aul.  (*Id.,* ¶ 23.)

On Wednesday, December 27, 2017, Aul received a 30-day supply of his medication:  Atorvastatin, Lisinopril, and Aspirin.  (*Id.*, ¶ 26.)  He requested a renewal of all his medications on January 15, 2018.  Nurse Chamberlain explained it was "too soon to pick up the medication."  (*Id.*, ¶¶ 30–32.)  On February 13, 2018, Aul requested a second medication refill.  He received some of his medication on February 16, 2018, and the balance on February 18, 2018.  (*Id.*, ¶¶ 35–38.)

PA Nagle saw Aul for a blood pressure check on January 12, 2018.  (*Id.*, ¶ 29.)  Aul complained of side effects from the cholesterol medication.  PA Nagle dismissed his complaints, reminding him he recently experienced a stroke.  (*Id.*)

Dr. Preston next saw Aul on January 29, 2018.  (*Id.*, ¶ 34.)  Aul's weight was 306 lbs., and his blood pressure was "not bad."  (*Id.*)  Aul repeated that he was experiencing side-effects from his medication.  Dr. Preston stated he would modify his medication.  They also discussed his December 2017 request for a special low carbohydrate, low sodium, high protein–bland diet.  (*Id.*)  Dr. Preston stated that only individuals with food allergies or religious needs would receive special diets.  (*Id.*)  A corrections officer told Aul individuals with medical needs received special diets.  (*Id.*)

Aul had bloodwork done on February 26, 2018.  (*Id.*, ¶ 40.)  Dr. Preston saw

him again on March 12, 2018.  Noting that Aul's cholesterol remained high, he

increased Aul's Lipitor despite Aul's continued complaints of side effects from the

medication.  Dr. Preston added Meloxicam to Aul's regimen to counter the side

effects of the other medications.  (*Id.*, ¶ 42.)  Aul picked up some of his

medications on March 13, 2018, and the Meloxicam the following day.  (*Id.*, ¶¶

43–44.)

On March 18, 2018, Aul stayed overnight in the medical unit in preparation

for an MRI at an outside facility the following day.  He returned to SCI-Rockview

immediately following the MRI.  (*Id.*, ¶¶ 45–46.)  Aul received the results of his

MRI on April 16, 2018.  The study showed he had two cysts in his brain.  PA

"Maria" told him that the cysts were normal.  (*Id.*, ¶¶ 48–49.)

In his complaint, Aul discusses, and incorporates by reference, documents

related to his exhaustion of his administrative remedies as to Grievance No.

713688, filed on December 29, 2017, alleging that "PA Julie" "misdiagnosed him"

as suffering from "ocular strain."  (*Id.*, ¶ 27; *see also* Doc. 4–1, p. 1.)  The only

other Defendant mentioned in the grievance is Dr. Preston, who sent him to the

Medical Center on December 22, 2017.  (Doc. 4–1, p. 1.)  Nurse Supervisor

Campbell denied the grievance at initial review.  She pointed out that nursing staff,

not a PA, treated him on December 16, 2017.  Nurse Campbell noted Aul did not

return to the medical unit with additional complaints until December 22, 2017. She also denied Aul's neurological studies supported his claim of permanent brain damage. (*Id.*, p. 3.) Aul appealed the grievance to the Facility Manager. He stated Ms. Julie was a PA and not a Nurse. He affirmed that he received Ibuprofen, not Motrin. He also questioned why he was not examined by a doctor on Saturday, December 16, 2017, when he claimed to have suffered a stroke. (*Id.*, p. 5.) In the Facility Manager's denial of Aul's grievance appeal, he noted that Aul did not return to the medical unit until December 22, 2017, even though he experienced three additional incidents of vision loss. (*Id.*, pp. 7–8.)

Aul's appeal to final review confirmed that medical staff told him he suffered from ocular strain after giving him an eye exam, giving Ibuprofen, and "told to come back" if he experienced the same visual issues. Aul asserts that he did not return earlier to the medical unit because he believed what he was told, that he suffered from ocular strain, not a stroke. On December 22, 2017, he said that he realized "they just were not doing anything and [he] had to get help." (*Id.*, p. 10.) On February 22, 2018, the DOC's Chief Grievance Officer referred the grievance appeal to the Bureau of Health Care Services. (*Id.*, p. 12.) On April 23, 2018, Aul's grievance appeal was denied at final review. (*Id.*, p. 13.)

## B. Procedural History

Aul filed his complaint and supporting memorandum of law on October 31, 2018, while housed at SCI-Rockview.[1]  Aul included copies of all documents related to his exhaustion of Grievance No. 713688 as attachments.  (Docs. 1, 4.)  After Aul paid the filing fee in this matter, the court served the complaint on the named Defendants.  (Doc. 12.)  Aul then filed a COM as to Correct Care Solutions, Dr. Preston and PA Nagle on June 25, 2019, indicating that he will not be presenting expert testimony as to his state negligence claims.  (Doc. 20.)

The Medical Defendants filed a motion to dismiss, or in the alternative, for summary judgment on August 9, 2019.  (Doc. 23.)  They also filed a statement of material facts and exhibits in support of their summary judgment motion based on Aul's failure to include them in his grievance concerning the events of December 16, 2017.  (Docs. 24, 28.)  Aul filed a timely counterstatement of facts and opposition brief.  (Docs. 27, 30–31.)  Medical Defendants filed an untimely reply brief on June 2, 2020.  (Doc. 38.)

The DOC Defendants filed a motion to dismiss on August 19, 2019.  (Doc. 26.)  A supporting brief was timely filed.  (Doc. 29.)  Aul filed an opposition brief, and COMs as to Nurse Supervisor Campbell, Nurse Chamberlain, and Nurse

---

[1] As of November 21, 2019, Aul is not in state custody and resides in Hughesville, Pa. (Doc. 36.)  Throughout this matter, Aul has represented himself.  On April 2, 2020, Attorney Mary Kilgus entered her appearance on behalf of Aul.  (Doc. 37.)

Supervisor Coffman on September 19, 2019.  (Docs. 32–34.)  DOC Defendants

filed a reply brief on October 3, 2019.  (Doc. 35.)

### JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district

court to exercise subject matter jurisdiction in civil cases arising under the

Constitution, laws, or treaties of the United States.  The court has supplemental

jurisdiction over Plaintiff's related medical negligence state law claims pursuant to

28 U.S.C. § 1367(a).

Venue is proper in this district because the alleged acts and omissions giving

rise to the claims occurred at SCI-Rockview, located in Centre County,

Pennsylvania, which is in this district.  *See* 28 U.S.C. § 1391(b)(2).

### MOTION TO DISMISS STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

9

2019), *cert. denied*, 140 S.Ct. 1611 (2020) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In deciding a motion to dismiss, the court should consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  *See Doe v. Univ. of Sciences*, 961 F.3d 203, 208 (2020) (quoting *Pension Ben. Guar. Corp. v. While Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).[2]

## DISCUSSION

DOC Defendants move to dismiss the complaint based on Aul's failure to state an Eighth Amendment claim against them, including his failure to allege the personal involvement of Defendants Coffman and Campbell.  (Doc. 29.)  Medical Defendants also contend Aul failed to state an Eighth Amendment claim against them as neither Dr. Preston nor PA Nagle were personally involved in the events of

---

[2] As the court will dismiss all claims against the Medical Defendants based on arguments presented in their motion to dismiss, there is no need for the court to address their administrative exhaustion argument raised in their summary judgment motion.

December 16, 2017.  (Doc. 24.)  Correct Care Solutions also contends Aul fails to articulate a cognizable § 1983 against it.  (*Id.*)  In his opposition briefs, Aul clarifies that he brings his Eighth Amendment claim exclusively against DOC Defendant Nurse Chamberlain and no other Defendant.[3]  His theory of liability against all other DOC or Medical Defendants is based exclusively on state-law theories of medical negligence and *respondeat superior*, not 42 U.S.C. § 1983. Accepting Aul's representation, the court construes Aul as voluntarily dismissing Eighth Amendment claims against all Defendants, except for Nurse Chamberlain, and proceeds with the analysis on that basis.

### A. Aul's Eighth Amendment Claim against Nurse Chamberlain

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v. Gamble,* 429 U.S. 97, 103–05 (1976).  To set forth a cognizable claim in this context, an inmate must "make (1) a subjective showing that the 'defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that

---

[3]  Aul's claims against Medical Defendants "sound solely under the color of Pennsylvania law." *See* Doc. 27, ¶¶ 7 and 11.  Aul's claim against "Defendant Chamberlain sounds both … within … the Eighth Amendment's prohibition on Cruel and Unusual Punishment, and Medical Negligence; while Defendants Ms. Coffman and Ms. Campbell sound solely under the color of Pennsylvania law with the Doctrine of *Respondeat Superior*." *See also* Doc. 31, ¶ 9.

'those needs were serious.'"  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir 1999)).

As to the second prong, the Third Circuit Court of Appeals has defined an objectively serious medical need as "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Although Aul was diagnosed as suffering a stroke several days after his encounter with Nurse Chamberlain, and after several unreported incidents of dizziness, vision loss, and headache, for the purposes of this motion only, the court will construe Aul as alleging that he had a serious medical need on December 16, 2017, when he first presented to Nurse Chamberlain.

With respect to the first prong, "[d]eliberate indifference entails something more than mere negligence," it is a subjective standard that requires "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994).  In the context of examining medical care afforded inmates, the Third Circuit Court of Appeals has found deliberate indifference where a prison official knows of an inmate's need for medical care and intentionally refuses to provide it, delays it for non-medical

reasons, or prevents the prisoner from receiving needed or recommended treatment. *Rouse,* 182 F.3d at 197. Thus, allegations of negligence or medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See id.*; *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of malpractice are not sufficient to establish a Constitutional violation.") (citations omitted)). Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *See Farmer,* 511 U.S. at 837-39. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment." *Id.*

Nurse Chamberlain contends that her failure to accurately diagnose Aul's condition that day does not rise to the level of an Eighth Amendment violation. (Doc. 29.) The court agrees. Aul claims Nurse Chamberlain "misdiagnosed" him on December 16, 2017, when she advised that he suffered from ocular strain rather than a stroke. (Docs. 4-1, p. 1; 28-1, p. 8.) As noted above, this theory of liability is not enough to state a deliberate indifference claim.

Moreover, as noted in Aul's complaint, Nurse Chamberlain did not ignore Aul's complaints of pain and vision loss. Aul presented at the medical unit 45 minutes after first experiencing a sudden loss of vision in his left eye and partial loss of vision in his right eye and a headache after participating in the institution's

power lifting program and doing squats.  Aul acknowledges that Nurse Chamberlain took his vitals, checked his blood pressure, and gave him an eye exam before stating he was suffering from an ocular strain and not a stroke.  Nurse Chamberlain gave him pain medicine, told him to take it easy, and instructed him "to come back if it happened again."  (Docs. 1 and 4-1, p. 10.)  Despite the fact that Aul experienced symptoms several times in the ensuing days, he did not return to the medical unit until December 22, 2017, disregarding Nurse Chamberlain's instruction to return if his symptoms returned.  "[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable.  *Lasko v. Watts*, 373 F. App'x. 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)).  Additionally, Aul does not suggest Nurse Chamberlain, or anyone else, prevented him from returning to the medical unit that day, or any time prior to December 22, 2017.

Aul's allegation that Nurse Chamberlain "misdiagnosed" him with ocular strain on December 16, 2017, rather than a stroke, without accompanying deliberate indifference, does not rise to the level of an Eighth Amendment violation.  In sum, Aul has failed to set forth well-pleaded facts to raise an inference that Nurse Chamberlain knew of and disregarded an excessive or substantial risk of harm to his health or safety on December 16, 2017.  *See Farmer*,

511 U.S. at 834 (requiring a culpable state of mind, such as reckless disregard to substantial risk of serious harm).

### B. Aul's Direct Liability & Vicarious Liability Claims of Medical Malpractice

Under Pennsylvania law, medical malpractice is "broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). To state a *prima facie* cause of action for a medical malpractice claim, a plaintiff must "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." *Id.*, 824 A.2d at 1145.

Under Pennsylvania law, to assert a professional liability claim against licensed professionals such as a physician, nurse, or a claim of corporate negligence against a hospital, state law requires a plaintiff to file a COM within sixty (60) days of filing the complaint. *See* Pa. R. Civ. P. 1042.1 and 1042.3; *Liggon –Redding v. Estate of Sugarman*, 659 F.3d 258, 249 (3d Cir. 2011); *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp.2d 238, 248 (E.D. Pa. 2008) ("A COM is required as to corporate negligence claims that are premised on allegations that a hospital's actions fell below the applicable medical or professional standard, i.e.,

where the claim is predicated upon facts constituting medical treatment.").  The

requisite COM must be filed within sixty days after filing the complaint, signed by

an attorney or *pro se* party, and must affirm that:

> (1)   an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

> (2)   the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

> (3)   expert testimony of an appropriate licensed professional is unnecessary for the prosecution of the claim.

Pa. R. Civ. P. 1042.3(a)(1)–(3).  When a plaintiff asserts both a claim of direct

liability and vicarious liability against a defendant, the plaintiff "shall file" either

separate COMs as to each theory or a single COM listing both theories.  *See* Pa. R.

Civ. P. 1042.3(b)(2); *see also Stroud*, 546 F. Supp.2d 249.

The Third Circuit Court of Appeals has held that Rule 1042.3 "is substantive

law," and must be applied to claims premised on Pennsylvania law presented in

federal court.  *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d

Cir. 2007).  Self-represented plaintiffs are not exempt from complying with the

COM requirements of Rule 1042.3 due to their *pro se* status or due to their incarceration. *See Jackson v. Superintendent Greene SCI*, 671 F. App'x 23, 24 (3d Cir. 2016); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 77 (3d Cir. 2013). The purpose of the COM requirement is to "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–61 (3d Cir. 2000).

In his complaint, Aul argues that all Defendants, including Nurse Chamberlain, as medical professionals, breached their duty of care to him when he "was misdiagnosed as having an 'ocular strain' instead of the proper diagnosis of a stroke." (Doc. 1 at ¶ 54.) This is his direct liability negligence claim. *See* Pa. R. Civ. P. 1042.3(a)(1). He also asserts a professional negligence claim against all Defendants, except Nurse Chamberlain, based on *respondeat superior*. He argues Medical Defendants and DOC Defendants were negligent in their supervision of Nurse Chamberlain. (*Id*., ¶¶ 55–57.) The court construes this as Aul's vicarious liability claim pursuant to Pa. R. Civ. P. 1042.3(a)(2).

### 1. Aul's Untimely Filing of COMs against the DOC Defendants

A defendant seeking dismissal of a professional liability claim due to a plaintiff's failure to file a COM "under Pa. R. Civ. P. 1042.7(a) shall file a written notice of intention to file the praecipe and serve it on the party's attorney of record or on the party if unrepresented, no sooner than the thirty-first day after the filing

of the complaint." Pa. R. Civ. P. 1042.6(a).  As this notice requirement is

substantive rather than procedural, it is applicable to professional liability actions

proceeding in federal court.  *See Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir.

2015).

In the instant case, DOC Defendants seek dismissal of Aul's state negligence

claims against them based on his failure to file the requisite COM within 60 days

of filing the complaint.  (Doc. 29.)  DOC Defendants, however, do not address the

substantive requirement under state law that they must provide Aul with notice of

his failure to file the COM prior to seeking judgment in their favor.  Absent any

evidence that they fulfilled their notice requirement, the court must deny their

motion to dismiss Aul's medical malpractice claim against them.  *See Young v.*

*Halligan*, 789 F. App'x 928, 931 (3d Cir 2019) (non-precedential) (motion to

dismiss inmate-plaintiff's state medical negligence claims after defendants notified

plaintiff of intent to seek dismissal for failure to timely file COM, and plaintiff

failed to file COM, affirmed) (citing *Schmigel*, 800 F.3d at 119–20).

### 2.  Aul's Failure to Present Expert Statement in support of his Negligence Claims

Aul has not filed a statement by a medical professional opining that

Defendants fell short of the required standard of care and that the breach

proximately caused his injury in his COMs.  Rather, Aul asserts in each COM that

he filed that "[e]xpert testimony of an appropriate licensed professional is

18

unnecessary for prosecution of the claim[s] against th[ese] defendant[s]."  *See* Docs. 20, 32–34.  Both DOC and Medical Defendants contend that Aul's failure to submit an expert witness statement in conjunction with his COMs is fatal to his ability to prove his medical negligence claims.

At this stage of the pleadings, Aul has substantially complied with Rule 1042.3's requirements by asserting that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against" each defendant.  Aul is now bound by this election in his COM.  *See* Pa. R. Civ. P. 1042.3(a)(3), Note.  If the matter proceeds further, however, Aul will be prohibited from offering expert testimony as to the standard of care that was allegedly breached and on the issue of the causation of his injuries.  (*Id.*)

### 3.  Aul's Direct Liability Medical Negligence Claims

As set forth above, a Pennsylvania plaintiff setting forth a medical malpractice claim against a health care professional has the burden of establishing each of the following elements:  (1) the defendant owed a duty to the patient; (2) the defendant breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm.  *See Warren v. Prime Care Medical Inc.,* 431 F. Supp.3d 565, 586 (E.D. Pa. 2019).

Both DOC (Campbell and Coffman) and Medical (Preston and Nagle) Defendants contend Aul fails to allege their personal involvement in the events of

December 16, 2017, the day Nurse Chamberlain allegedly misdiagnosed him with ocular strain.   Dr. Preston is not alleged to have examined Aul until December 22, 2017, when he sent Aul to the Medical Center.  (Doc. 1, ¶ 21.)  Aul's first encounter with PA Nagle was on January 12, 2018, when PA Nagle checked his blood pressure.  (*Id.*, ¶ 29.)  Nurse Campbell's involvement is limited to her review of Aul's grievance of being misdiagnosed by Nurse Chamberlain.  (Doc. 4-1, p. 3.) There are no factual allegations in the complaint or supporting memorandum concerning Nurse Coffman other than Aul's identification of her as a party. Accordingly, Aul has failed to set forth his direct medical negligence claims against Nurse Campbell, Nurse Coffman, Dr. Preston or PA Nagle because he has failed to set forth with any specificity the duty they owed him as a patient as they are not alleged to have any interaction with him at the time Nurse Chamberlain allegedly misdiagnosed him with ocular strain rather than a stroke on December 16, 2017.  He does not allege how their personal actions, after his alleged misdiagnosis, caused him any harm.  Aul's allegations as to these Defendants' direct medical negligence are simply too vague to enable them to prepare a defense.  Accordingly, Aul's direct liability negligence claims against Defendants Campbell, Coffman, Preston and Nagle are dismissed.

20

### 4. Aul's Vicarious Liability Claims

The Medical Defendants assert two bases for the dismissal of Aul's vicarious liability claims. Medical Defendants argue they cannot be held vicariously liable for the alleged negligence of Nurse Chamberlain because there are no factual averments to support a master–servant relationship between them and Nurse Chamberlain. Aul has plead that Nurse Chamberlain is an employee of the DOC and not Correct Care Solutions, Dr. Preston, or PA Nagle. Likewise, Correct Care Solutions cannot be held vicariously liable for the alleged medical negligence of Dr. Preston or PA Nagle because Aul has failed to plead that either employee engaged in conduct that would give rise to any breach of duty owed to him because, as he alleges in his complaint, neither Dr. Preston nor PA Nagle are alleged to have treated Aul prior to December 22, 2016. The court agrees that Aul has failed to adequately set forth a vicarious liability claim against Medical Defendants for these reasons.

Aside from failing to properly assert the requisite agency relationship for his vicarious liability claim, Medical Defendants content that Aul did not file a COM in support of this claim as required. Upon examination of Aul's COM pertaining to Medical Defendants, they are correct that Aul only checked the third box of the COM and not the second which is required for the purpose of supporting his claim of Medical Defendants' liability based on the actions of others. *See* Doc. 20 and

Pa. R. Civ. P. 1042.3(b)(2).  The court notes that Aul's COM with respect to the DOC Defendants is equally deficient as it is identically marked.  Accordingly, Medical Defendants' motion to dismiss Aul's vicarious liability claims will be granted.

Additionally, pursuant to the court's authority under 28 U.S.C. §1915(e)(2)(b)(ii), Aul's vicarious liability claims as to the DOC Defendants will be dismissed.   As a COM "is not part of the complaint," *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.,* 692 F.3d 283, 303 (3d Cir. 2012), granting Aul leave to file an amended complaint would not remediate the deficiencies of his COM.  *See Stroud,* 546 F. Supp. 2d at 255 ("amendments to the complaint do not provide plaintiff with a restarted period in which to file a COM").  Here, Aul has filed COMs against all Defendants, and his elections in those COM are binding.  *See* Pa. R. Civ. P. 1042.3(a)(3), Note. Accordingly, Aul's state negligence claims against all Defendants, except Nurse Chamberlain, will be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the court will construe the complaint as setting forth an Eighth Amendment claim only against Nurse Chamberlain, direct professional medical negligence claims against all individual Defendants, and claims of vicarious liability against all Defendants but Nurse Chamberlain.  Due to

Plaintiff's failure to set forth a proper Eighth Amendment claim against Nurse Chamberlain, the claim is dismissed without prejudice.  Plaintiff's direct liability negligence claims against all Defendants except Nurse Chamberlain are dismissed without prejudice.  Plaintiff's vicarious liability claims as to all Defendants are dismissed with prejudice due to Plaintiff's failure to file an appropriate COM in support of these claims. [4]  The court will grant Plaintiff leave to file an amended complaint in accordance with this opinion.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  October 26, 2020

---

[4] As Medical Defendants' motion to dismiss was dispositive of all claims against them, the court dispensed addressing their motion for summary judgment based on exhaustion.

23