## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSE EARL AUL, | : | Civil No. 3:18-CV-02142 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECT CARE SOLUTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This case is a prisoner civil rights action filed by Plaintiff Jesse Earl Aul, a former state inmate, concerning his alleged denial of medical care after suffering a stroke while incarcerated. (Doc. 45.) Employees of the Pennsylvania Department of Corrections ("DOC") and Correct Care Solutions, LLC ("CCS") are named as Defendants. The DOC Defendants are Nurse Supervisors Elaine Coffman, R.N. and Lisa Campbell, R.N., as well as Julie Chamberlain, L.P.N. The "Medical Defendants" are CCS, Dr. Vernon Preston, and Physician Assistant ("PA") Patrick Nagle. Presently before the court are the motions to dismiss the amended complaint that have been filed by both groups of Defendants. (Docs. 46, 47.) For the reasons that follow, the amended complaint will be dismissed in its entirety without leave to amend.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jesse Earl Aul is a former state inmate who initiated this action on his own behalf concerning his medical care while housed at the Rockview State Correctional Institution ("SCI-Rockview"). This matter proceeds on the counseled amended complaint. (Doc. 45.)

### A. Factual Allegations

For the purpose of addressing the motions to dismiss, the court will take the following allegations set forth in the amended complaint as true.[1] On December 18, 2017, while housed at SCI-Rockview, Jessie Earl Aul ("Plaintiff" or "Aul") suddenly lost vision and suffered a debilitating headache while weightlifting. (Doc. 45, ¶ 11.) Aul reported to the medical unit where Nurse Chamberlain saw him. She assessed him as suffering from "'ocular strain' and to take Ibuprofen and 'take it easy.' No other tests were done by L.P.N. Chamberlain." (*Id.*) Although 85% of Aul's vision returned, he continued to suffer from headaches that were not relieved by Ibuprofen. Aul "took it easy" for three days before returning to the weight room. Upon engaging in "light exercise," Aul again suddenly lost his vision and had a tremendous headache. (*Id.*, ¶ 12.) Believing he had ocular strain, Aul continued to take Ibuprofen and rest. Later that day when showering, he lost

---

[1] On a motion to dismiss, the court "accepts as true all factual allegations in the complaint and views those facts in the light most favorable to the non-moving party." *Doe v. Univ. of Scis*, 961 F.3d 203, 208 (3d Cir. 2020).

his vision again.  (*Id.*, ¶ 13.)  Aul rested for three more days and continued to take Ibuprofen.  (*Id.*)

On December 24, 2017,[2] Aul again tried to exercise, but lost his vision and "was referred to 'medical' again."  (*Id.*)  Dr. Preston saw Aul and sent him to the Mount Nittany Medical Center for further evaluation.  (*Id.*, ¶ 14.)  Extensive testing revealed that Aul had suffered a stroke.  Before releasing Aul back to SCI-Rockview, the Mount Nittany Medical Center treating physician issued him a prescription.  (*Id.*)  Upon his arrival at SCI-Rockview, Dr. Preston changed that prescription.  (*Id.*, ¶16.)

On December 25, 2017, Dr. Christina Doll, a non-defendant, gave Aul a one-day supply of medication.  (*Id.*, ¶ 17.)  On January 12, 2018, PA Nagle saw Aul.  Aul complained of "serious side effects from the medication, including arthritic pain and an inability to concentrate."  (*Id.*, ¶ 18.)  PA Nagle advised he had just suffered a stroke and that Dr. Preston had not scheduled a follow-up visit for him at the Mount Nittany Medical Center.  (*Id.*)

---

[2] The complaint lists this date as December 2, 2017.  (Id., ¶ 13.)  The court believes this date to by a typographical error as December 2, 2017 pre-dates the alleged date of the initial injury, December 18, 2017.  Based on the allegations of the amended complaint, Aul returned to the medical unit six days after his initial visit, which would be December 24, 2017.  *See Id., ¶¶* 12–13.

On January 15, 2018, Aul requested a refill of his medication. It was not honored until February 19, 2018. He claims he regularly had difficulty obtaining his medication. (*Id*., ¶ 19.)

On January 29, 2018, Dr. Preston advised Aul that he would schedule a CT scan for him "to see how effective the medication was." (*Id.*, ¶ 20.) When Aul complained of spasms, arthritis in his hands, and the inability to concentrate, Dr. Preston advised that his medication may need to be changed. However, no CT scan or medication adjustment was made. (*Id*., ¶ 20.) On March 12, 2018, Dr. Preston prescribed an additional prescription for Aul after he registered complaints of the side effects of his medication. (*Id*., ¶ 21.)

Aul states three claims in his counseled amended complaint. First, he claims that Nurse Chamberlain was deliberately indifferent to his serious medical condition after she misdiagnosed his stroke on December 18, 2017. (*Id*., ¶¶ 24–28, Count I.) Second, Aul asserts a direct liability negligence claim against all Defendants. Aul claims the Defendants "had a duty to provide [him] adequate healthcare" and they breached that duty "by not diagnosing [his] stroke, and not taking proper care of him following the stroke." (*Id*., ¶¶ 29–31, Count II.) Specifically, he alleges Nurse Chamberlain "failed to accurately diagnosis [his] stroke." (*Id*., ¶ 31a.) Dr. Preston was negligent in failing "to provide [him] adequate care of a stroke victim until days later" and by changing the prescription

issued by the outside physician "to the detriment of the plaintiff." (*Id.*, ¶ 31b-c.) Both Dr. Preston and PA Nagle failed to order "further testing or other remedies for the side effects of the medication" as well as failing to address "any medical needs of a stroke victim, to include forgetting to schedule tests and provide medication." (*Id.*, ¶ 31d-e.) Aul's final claim is based on *respondeat superior*, or vicarious liability. (*Id.*, ¶¶ 33-39, Count III.) Aul states that as "CCS is the employer of the other defendants, they are responsible to make sure employees are property (sic) trained to recognize stroke and other inmate maladies, and they failed to do so." (*Id.*, ¶ 36.) Dr. Preston is alleged to supervise PA Nagle and Nursing Supervisor Elaine Coffman. (*Id.*, ¶ 37.) Nursing Supervisor Elaine Coffman is alleged to be the supervisor of Lisa Campbell and Nurse Chamberlain. (*Id.*, ¶ 38.) Aul claims CCS and Dr. Preston are liable for Nurse Chamberlain's failure "to property (sic) diagnose stroke in Plaintiff and giving him provably false information of 'ocular strain.'" (*Id.*, ¶ 39.) Nurses Campbell and Coffman, "who supervised Chamberlain are vicariously liable for said failure to accurately diagnose a stroke, causing delay and failure to provide follow-up care." (*Id.*) As relief, Aul seeks actual and punitive monetary damages.

## B. Procedural History

On October 31, 2018, Aul initiated this action asserting an Eighth Amendment deliberate indifference claim against Nurse Chamberlain and state

medical negligence claims against all Defendants.[3]  He was self-represented at the time.  (Doc. 1.)  Aul simultaneously filed a memorandum and documents in support of his complaint.  (Doc. 4.)  After paying the filing fee in this matter, the complaint was served on Defendants.  (Doc. 12.)  Aul filed Certificates of Merit ("COM") as to all Defendants.  His COM regarding the Medical Defendants indicates that expert testimony of an appropriate licensed professional is unnecessary for the prosecution of his state negligence claims against them.  (Doc. 20.)  Aul's COMs as to the DOC Defendants are similarly worded.  *Compare* Docs. 20, 32–34.  Aul's COMs indicated he was only pursuing direct liability claims against the Defendants.  (*Id.*)

Both sets of Defendants filed motions to dismiss the complaint.  (Docs. 23, 26.)  On October 26, 2020, the court dismissed, without prejudice, Aul's Eighth Amendment claim against Nurse Chamberlain after finding he failed to sufficiently plead that she knew of and disregarded an excessive or substantial risk of harm to his health or safety on December 18, 2017.  (Doc. 39, p. 14.)[4]  The court also dismissed Aul's direct liability negligence claims as to Defendants Campbell, Coffman, Preston, and Nagle without prejudice due to Aul's failure provide any

---

[3] To the extent asserted, Aul voluntarily withdrew all Eighth Amendment claims against all Defendants except Nurse Chamberlain.  *See* Doc. 27, ¶¶ 7, 11 and Doc. 31, ¶ 9.

[4] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

specifics as to his claims against them as they were either not directly or did not interact with him prior to Aul being sent to the outside hospital. (*Id*., p. 20.) Finally, the court dismissed Aul's medical malpractice vicarious liability claims against all Defendants with prejudice due to his failure to file an appropriate COM in support his claims. (*Id*., pp. 21–22.)

Aul filed a counseled amended complaint on December 14, 2020. (Doc. 45.) On December 24, 2020, the DOC Defendants filed a motion to dismiss the amended complaint. (Doc. 46.) The Medical Defendants filed a motion to dismiss on January 4, 2021. (Doc. 47.) Both motions were properly briefed shortly thereafter. (Docs. 48, 49.) Plaintiff filed a single opposition brief addressing both motions to dismiss. (Doc. 50.) Both DOC and Medical Defendants filed reply briefs. (Docs. 51, 52.) The motions are presently ripe for review.

### JURISDICTION AND VENUE

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. The court has supplemental jurisdiction over Plaintiff's related medical negligence state law claims in accordance with 28 U.S.C. § 1367(a).

Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Rockview, located in Centre County, Pennsylvania, which is in this district. *See* 28 U.S.C. § 1391(b)(2).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In deciding a motion to dismiss, the court should consider only the allegations in the complaint, exhibits attached to the complaint, and matters of

public record. *See Doe,* 961 F.3d at 208 (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). It is axiomatic that facts plead in a verified complaint constitute judicial admissions that are binding on a party. *See Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972). However, "judicial admissions may be withdrawn by amendment." W. *Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). An amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." (*Id.*) "[W]ithdrawn or superseded pleading" do not constitute judicial admissions. *Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547 (3d Cir. 1956). This "is so even when the proposed amendment flatly contradicts" the allegations set forth in the original pleading or omits previously pled facts in order to avoid dismissal. *W. Run Student Hous. Assocs.,* 712 F.3d at 172. However, "a party's assertion of contrary factual positions in the pleadings is [not] without consequence. A superseded pleading may be offered as evidence rebutting a subsequent contrary assertion." *Id.*, at 172–73. In sum, unless the original pleading is adopted or incorporated by reference, a plaintiff is not bound by the allegations of a superseded complaint. *Id.* at 173.

To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In their motions to dismiss, Defendants argue that Aul fails to state an Eighth Amendment claim; fails to allege a direct negligence claim against any Defendant; and is precluded from reasserting his vicarious liability negligence claims as they were previously dismissed with prejudice. The court will address Defendants' challenge to each count of the amended complaint.

## A. Count I – Aul's Eighth Amendment Claim

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). "To set forth a cognizable Eighth Amendment claim for inadequate medical care, a prisoner must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need." *Ryle v. Fuh*, 820 F. App'x 121, 123 (3d Cir. 2020) (citing *Estelle*, 429 U.S. at 104.) A medical need is serious if it "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). In order to find deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The Third Circuit Court of Appeals has found deliberate indifference where a prison official knows of an inmate's need for medical care and intentionally refuses to provide it, delays it for non-medical reasons, or prevents the prisoner from receiving needed or recommended treatment. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1992).

Prison medical authorities are "accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Moreover, a prisoner's disagreement with the prison medical professional's judgment, or even a difference of medical opinion between two physicians, does not state an Eighth Amendment claim, because "[t]here may … be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Allegations of medical malpractice are also insufficient to establish an Eighth Amendment constitutional violation. *Romero v. Ahsan*, 827 F. App'x 222, 226 (3d Cir. 2020) (citing *White,* 897 F.2d at 108–09). Deliberate indifference is more than malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer*, 511 U.S. at 837; *see also Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment). Accordingly, a diagnosis or treatment rendered, even if incorrect, without the requisite accompanying culpable state of mind, does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835. The Supreme Court has held that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the defendant's requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991). Plaintiff must "connect his factual allegations to the alleged mental states" of the

Defendants. *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004); *Pearson v. Prison Health Services*, 850 F.3d 526, 539 (3d Cir. 2017).

Thus, in order to allege a cognizable Eighth Amendment violation, Aul was required to plead facts showing that he suffered from a sufficiently serious medical need, that Nurse Chamberlain was subjectively aware of facts from which the inference could be drawn that failure to provide treatment for that need posed a substantial risk of serious harm, and that Nurse Chamberlain, in fact, drew that inference but disregarded the risk anyway.

As an initial matter, the court clarifies that Count I of Plaintiff's amended complaint sets forth an Eighth Amendment claim against a single defendant, Nurse Chamberlain. (Doc. 45, ¶¶ 24–28.) Based on Aul's response to the Defendants' motions to dismiss, he believes he asserted an Eighth Amendment claim against all Defendants, not just Nurse Chamberlain. (Doc. 50.) The court does not agree. Count I of Aul's counselled amended complaint is exclusively plead against Nurse Chamberlain. Moreover, Aul previously notified the parties and the court he never intended to assert such an Eighth Amendment claim against any other Defendant. Based on Aul's representation, the court did not address the Medical Defendants' motion to dismiss the constitutional claims against them due to Aul's failure to exhaust his administrative remedies against them and deemed such claims

voluntarily withdrawn.  (Doc. 27, ¶¶ 7, 11 and Doc. 31, ¶ 9.)  Thus, he is precluded from reasserting these claims.

Second, according to Aul, he first presented at the medical unit with symptoms of loss of vision and a headache after lifting weights on December 18, 2017.  Nurse Chamberlain saw him and did not perform or conduct "any other tests" and "ignored" the presentation of "symptoms of a stroke."  (Doc. 45, ¶¶ 11, 25–27.)  She advised that he suffered from "ocular strain," prescribed him Ibuprofen, and told him to "take it easy."  (*Id.*, ¶ 11.)  Aul claims "[t]he misdiagnosis by Defendant Chamberlain violated the Plaintiff's rights against cruel and unusual punishment and were deliberately indifference (sic) to the proper care of a stroke victim."[5]  (*Id.*, ¶ 27.)  Aul fails to assert a plausible Eighth Amendment claim against Nurse Chamberlain.

Aul does not state that he previously suffered from these symptoms or had a medical history that would suggest he was prone to suffering a stroke.  He first presented to the medical unit with these symptoms on December 18, 2017, where Nurse Chamberlain saw him.  She did not disregard his medical complaints.  Instead, she advised Aul that he suffered from an ocular strain and advised him to

---

[5] While the DOC Defendants cite to additional facts concerning the December 18, 2017 visit which provide further detail as to Nurse Chamberlain's medical assessment of Aul that day (checking his blood pressure, performing a vision test, prescribing him Ibuprofen, and telling him "to come back if it happened again"), the court may not consider these facts as they are from a superseded pleading.  *See* Doc. 1, ¶ 15; Doc. 4–1, p. 10; Doc. 49, p. 7.

take it easy and prescribed him Ibuprofen for his pain. Aul does not allege that her evaluation or treatment decisions were based on anything other than her medical judgment. *Rouse*, 182 F.3d at 197. As explained above, Aul cannot recover if Nurse Chamberlain's actions were merely negligent in failing to provide him with the proper degree of medical care or amount to a mere disagreement about the care rendered absent a showing of deliberate indifference. *White*, 897 F.2d at 108–09; *Farmer*, 511 U.S. at 835–37; *Singletary*, 266 F.3d at 192 n.2; *Estelle*, 429 U.S. at 106; *Durmer* 991 F.2d at 67. Aul must show that Nurse Chamberlain knew of his need for further medical care or evaluation and intentionally refused to provide that care or erected arbitrary and burdensome procedures to obtain that care, none of which is asserted in the amended complaint. *Farmer*, 511 U.S. at 837; *Rouse*, 182 F.3d at 197.

Aul does not assert that Nurse Chamberlain had subjective awareness that Aul suffered a stroke. *Wilson*, 501 U.S. at 297–298; *Spruill*, 372 F.3d at 237; *Pearson*, 850 F.3d at 539. While Aul suggests that Nurse Chamberlain missed physical findings of his stroke due to her failure to perform "any other tests," this again asserts negligence on her part, not deliberate indifference. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835; *Whitley,* 475 U.S. at 319; *Durmer*, 991 F.2d at 67. Thus, Aul's Eighth Amendment claim against Nurse Chamberlain, based strictly

on the December 18, 2017 encounter, does not amount to deliberate indifference to a serious medical need as required to support an Eighth Amendment claim.

## B. Count II – Aul's Direct & Vicarious Liability Medical Negligence Claims

Under Pennsylvania law, medical negligence is "broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). A Pennsylvania plaintiff setting forth a medical malpractice claim against a health care professional has the burden of establishing each of the following elements: (1) the defendant owed a duty to the patient; (2) the defendant breached that duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm. *See Warren v. Prime Care Medical Inc.*, 431 F. Supp.3d 565, 586 (E.D. Pa. 2019). Additionally, the statute of limitations in Pennsylvania for "any action ... to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct" is two years. *See* 42 Pa. Cons. Stat. § 5524.

Under Pennsylvania law, to assert a professional liability claim against licensed professionals such as a physician, nurse, or a claim of corporate negligence against a hospital, state law requires a plaintiff to file a COM within 60

days of filing the complaint. *See* Pa. R. Civ. P. 1042.1 and 1042.3; *Liggon –*

*Redding v. Estate of Sugarman*, 659 F.3d 258, 249 (3d Cir. 2011); *Stroud v.*

*Abington Mem'l Hosp.*, 546 F. Supp.2d 238, 248 (E.D. Pa. 2008) ("A COM is

required as to corporate negligence claims that are premised on allegations that a

hospital's actions fell below the applicable medical or professional standard, i.e.,

where the claim is predicated upon facts constituting medical treatment.").  The

requisite COM must be filed within 60 days after filing the complaint, signed by an

attorney or *pro se* party, and must affirm that:

> (1)     an appropriate licensed professional has supplied a
> written statement that there exists a reasonable
> probability that the care, skill or knowledge
> exercised or exhibited in the treatment, practice or
> work that is the subject of the complaint, fell outside
> acceptable professional standards and that such
> conduct was a cause in bringing about the harm, or
>
> (2)     the claim that the defendant deviated from an
> acceptable professional standard is based solely on
> allegations that other licensed professionals for
> whom this defendant is responsible deviated from
> an acceptable professional standard, or
>
> (3)     expert testimony of an appropriate licensed
> professional is unnecessary for the prosecution of
> the claim.

Pa. R. Civ. P. 1042.3(a)(1)–(3).  When a plaintiff asserts both a claim of direct

liability and vicarious liability against a defendant, the plaintiff "shall file" either

separate COMs as to each theory or a single COM listing both theories. *See* Pa. R. Civ. P. 1042.3(b)(2); *see also Stroud*, 546 F. Supp.2d 249.

The Third Circuit Court of Appeals has held that Rule 1042.3 "is substantive law," and must be applied to claims premised on Pennsylvania law presented in federal court. *See Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007). Self-represented plaintiffs are not exempt from complying with the COM requirements of Rule 1042.3 due to their *pro se* status or due to their incarceration. *See Jackson v. Sup't Greene SCI*, 671 F. App'x 23, 24 (3d Cir. 2016); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 77 (3d Cir. 2013). The purpose of the COM requirement is to "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–61 (3d Cir. 2000).

### 1. Aul's *Respondeat Superior* Negligence Claims

In his amended complaint, Aul inexplicably reasserts his state law respondeat superior or vicarious liability claims against all Defendants that were previously dismissed with prejudice. *See Aul v. Correct Care Solutions*, Civ. No. 3:18-CV-2141, 2020 WL 6273888, *8 (M.D. Pa. Oct. 26, 2020). As such, these claims are subject to the law of the case doctrine which holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d

Cir. 2008) (internal citations omitted); *see also Angel Luis Thomas, Sr., v. Col. Tyree Blocker*, No. 4:18-CV-0812, *5, 2021 WL 1392134 (M.D. Pa. April 13, 2021) (same).  Accordingly, Aul's *respondeat superior* are dismissed with prejudice.

### 2.  Aul's Direct Negligence Claims

In his complaint, Aul argues that all Defendants, including Nurse Chamberlain, as medical professionals, breached their duty to diagnose his stroke and by failing to provide adequate care following his stroke.  (Doc. 45, Count II, Negligence, ¶¶ 29–32.)  Initially, it is noted that Aul does not allege a direct negligence claim against either Nurse Supervisors Coffman or  Campbell.  There are no facts plead in the amended complaint asserting their personal involvement in his care at any time.  With that said, Aul's direct medical negligence claims lodged against Nurse Chamberlain, Dr. Preston, and PA Nagle remain, but will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) as the court declines to exercise supplemental jurisdiction over them now that no constitutional claim remains.  *See infra.*

### C. Denial of Supplemental Jurisdiction over Remaining State Law Claims

A district court may decline to exercise supplemental jurisdiction where all claims over which the court has original jurisdiction have been dismissed.  *See* 28 U.S.C. § 1367(c)(3).  The Third Circuit Court of Appeals has held that "where the

claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification to do so." *Hedges v. Musco*, 204 F.3d 109, (2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 789, 788 (3d Cir. 1995) (emphasis in original). In the absence of a viable federal claim, there are no reasons justifying the court's exercise of supplemental jurisdiction over any of Aul's direct medical negligence state law claims. Accordingly, the court will dismiss without prejudice Aul's medical malpractice claims against Nurse Chamberlain, Dr. Preston, and Pa Nagle pursuant to 28 U.S.C. § 1367(c)(3).[6]

## CONCLUSION

For the foregoing reasons, the DOC Defendants' motion to dismiss, Doc. 46, and Medical Defendants' motion to dismiss, Doc 47, will be granted with respect to Plaintiff's Eighth Amendment claims against all Defendants. In addition, Aul's vicarious liability medical negligence claims against all Defendants remain dismissed with prejudice. Finally, Plaintiff's direct medical malpractice claims against Nurse Chamberlain, Dr. Preston and PA Nagle are dismissed without

---

[6] The court notes that when a district court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a thirty day after the suit is dismissed. *See* 28 U.S.C. § 1367(d); *Hedges*, 204 F.3d at 123–24.

prejudice pursuant to 28 U.S.C. § 1367(c)(3).  An appropriate order follows.

                                         s/ Jennifer P. Wilson_____
                                         JENNIFER P. WILSON
                                         United States District Court Judge
Dated:  May 7, 2021             Middle District of Pennsylvania